1  TODD P. STELTER (admitted pro hac vice)
2  VINCENT M. RIZZO (SBN: 342590)
   HINSHAW & CULBERTSON LLP
3  151 North Franklin Street, Suite 2500
   Chicago, Illinois 60606
4  Telephone:   312-704-3000
   Facsimile:   312-704-3001
5  vrizzo@hinshawlaw.com
   tstelter@hinshawlaw.com
6  *Attorneys for Defendant Great Wolf Resorts, Inc.*

7              **UNITED STATES DISTRICT COURT**

8         **FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| 9  OPHELIA AUGUSTINE, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>GREAT WOLF RESORTS, INC.,<br><br>Defendant. | Case No. 23-cv-0281 DMS BGS<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Honorable Judge Dana M. Sabraw<br>Courtroom: 13A<br>Hearing: December 15, 2023 at 1:30 p.m. |

18        TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

19        PLEASE TAKE NOTICE that on December 15, 2023 at 1:30 p.m. before the

20  Honorable Judge Dana M. Sabraw, Chief Judge of the United States District Court

21  for the Southern District of California, in Courtroom 13A at 333 West Broadway,

22  San Diego, CA 92101, Defendant Great Wolf Resorts, Inc. hereby moves to dismiss

23  Plaintiff's First Amended Complaint pursuant to Federal Rule of Civil Procedure

24  12(b)(6).

25        The motion is based on this notice and motion, the supporting memorandum

26  of points and authorities, all pleadings and documents on file in this matter, and such

27  oral or written evidence or argument as may be presented in connection with this

28  motion.

1   DATED:  November 13, 2023          HINSHAW & CULBERTSON LLP

2

3                                       */s/Todd P. Stelter*
                                        TODD P. STELTER
4                                       VINCENT M. RIZZO
                                        Attorneys for Defendant
5                                       GREAT WOLF RESORTS, INC.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page(s)**

MEMORANDUM OF POINTS AND AUTHORITIES..................................................1

I.    INTRODUCTION.................................................................................1

II.   FACTS .................................................................................................2

III.  ARGUMENT .......................................................................................3

    A.   The FAC Fails Because it Alleges the Same Type of Threadbare Claim *Iqbal* and *Twombly* Warn Of. ........................3

    B.   The FAC Fails to State a Claim Under CIPA § 631(a). .............4

    C.   The FAC Fails to State a Claim Under CIPA § 631(a) Clause One. ........................................................................................5

        1.   Parties To A Conversation Cannot Eavesdrop on Their Own Conversations. ........................................................5

        2.   No Communication Via "Telegraph or Telephone Wire, Line, Cable, or Instrument of Any Internal Telephonic Communication System" is Alleged. ............6

    D.   The FAC Fails to State a Claim Under CIPA § 631(a) Clause Two. ........................................................................................7

        1.   Parties To A Conversation Cannot Eavesdrop on Their Own Conversations. ........................................................7

        2.   The FAC Fails to Allege Anyone Read or Learned the "Contents or Meaning" of Any Communication..............8

        3.   The FAC Fails to Allege Anyone Read or Learned Anything "In Transit."................................................10

        4.   The FAC Fails to Allege Facts Supporting Lack of Consent. ........................................................................12

    E.   The FAC Fails to State a Claim Under CIPA § 631(a) Clause Three. ......................................................................................13

i

1.    Parties To A Conversation Cannot Eavesdrop on Their Own Conversations. ....................................................... 13

2.    A Violation of Clause Three Cannot Exist Without a Violation of Either Clause One or Clause Two.............. 13

F.    The FAC Fails to State a Claim Under CIPA § 631(a) Clause Four. ........................................................................ 14

1.    No Derivative Claim for Aiding Contentsquare in Violating Clause One Exists Because No Communication Via "Telegraph or Telephone Wire, Line, Cable, or Instrument of Any Internal Telephonic Communication System" is Alleged. ............................ 14

2.    No Derivative Claim for Aiding Contentsquare in Violating Clause Two Exists Because The FAC Fails to Allege Anyone Read or Learned the "Contents or Meaning" of Any Communication. ................................ 15

3.    No Derivative Claim for Aiding Contentsquare in Violating Clause Two Exists Because The FAC Fails to Allege Anyone Read or Learned Anything "In Transit." ......................................................................... 15

4.    No Derivative Claim for Aiding Contentsquare in Violating Clause Two Exists Because the FAC Fails to Allege Facts Supporting Lack of Consent...................... 16

5.    No Derivative Claim for Aiding Contentsquare in Violating Clause Three Exists Because A Violation of Clause Three Cannot Exist Without a Violation of Either Clause One or Clause Two. ................................. 16

6.    The FAC Fails to Plausibly Allege the Existence of a Third-Party Eavesdropper. ............................................. 17

IV.    CONCLUSION ...................................................................................21

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Adler v. Cmty.*,
   2021 U.S. Dist. LEXIS 201644 (C.D. Cal. 2021) ............................................ 12

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................. 3, 4, 11

*Augustine v. Capital One Auto*,
   18-cv-00511 (S.D. Cal. 2018) ..................................................................... 1

*Augustine v. Capital One*,
   Case No.: 18-cv-00180 (S.D. Cal. 2018) ............................................ 1, 5, 12

*Augustine v. Credit One*,
   18-cv-00184 (S.D. Cal. 2018) ..................................................................... 1

*Augustine v. Experian*,
   20-cv-00365 (S.D. Cal. 2020) ..................................................................... 1

*Augustine v. Lenovo*,
   Case No.: 22-cv-02027 (S.D. Cal. 2022) ............................................... 1, 13

*Augustine v. Lien Enforcement*,
   18-cv-02115 (S.D. Cal. 2018) ..................................................................... 1

*Augustine v. Quest Diagnostics*,
   Case No.: 22-cv-01980 (S.D. Cal. 2022) ............................................... 1, 13

*Augustine v. TLC Resorts Vacation Club*,
   18-cv-01120 (S.D. Cal. 2018) ..................................................................... 1

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ................................................................................. 3, 4, 11

*Brodsky v. Apple Inc.*,
   445 F. Supp. 3d 110 (N.D. Cal. 2020) ...................................................... 8, 9

*Bunnell v. Motion Picture Ass'n of Am.*,
   567 F. Supp. 2d 1148 (C.D. Cal. 2007) ....................................................... 11

*In re Carrier IQ, Inc.*,
   78 F. Supp. 3d 1051 (N.D. Cal. 2015) ................................................................. 9

*Cody v. Boscov's, Inc.*,
   2023 U.S. Dist. LEXIS 37331 (C.D. Cal., Mar. 3, 2023) ................................. 20

*Dura Pharmaceuticals, Inc. v. Broudo*,
   544 U.S. 336 (2005) ........................................................................................... 4

*Esparza v. Uag Escondido A1 Inc.*,
   2023 U.S. Dist. LEXIS 130589 (S.D. Cal., July 27, 2023) ........................ *passim*

*In re Facebook, Inc. Internet Tracking Litig.*,
   956 F.3d 589 (9th Cir. 2020) ......................................................................... 6, 8

*Garcia v. Build.com*,
   2023 U.S. Dist. LEXIS 121085 (S.D. Cal., July 13, 2023) ........................ *passim*

*Goldstein v. Costco Wholesale Corp.*,
   559 F. Supp. 3d 1318 (S.D. Fla. 2021) ........................................................... 10

*In re Google Assistant Privacy Litig.*,
   457 F. Supp. 3d 797 (N.D. Cal. 2020) ............................................................ 13

*In re Google Inc. Gmail Litig.*,
   2013 U.S. Dist. LEXIS 172784 (N.D. Cal. 2013) ........................................... 14

*Graham v. Noom*,
   533 F. Supp. 3d 823 (N.D. Cal. 2021) ...................................................... 18, 19

*Johnson v. Blue Nile, Inc.*,
   2021 U.S. Dist. LEXIS 68711 .......................................................................... 20

*Konop v. Hawaiian Airlines, Inc.*,
   302 F.3d 868 (9th Cir. 2002) .......................................................................... 10

*Licea v. Am. Eagle Outfitters, Inc.*,
   2023 U.S. Dist. LEXIS 42549 (E.D. Cal., Mar. 7, 2023) ................. 7, 10, 19, 20

*Licea v. Cinmar*,
   2023 U.S. Dist. LEXIS 38233 (C.D. Cal., Mar. 7, 2023) ................................. 20

*Licea v. Vitacost.com, Inc.*,
   2023 U.S. Dist. LEXIS 142055 (S.D. Cal., July 24, 2023) .............................. 19

*Martin v. Sephora USA, Inc.*,
  2023 U.S. Dist. LEXIS 55930 (E.D. Cal. Apr. 24, 2023) ................................20

*Mastel v. Miniclip SA*,
  549 F. Supp. 3d 1129 (E.D. Cal. 2021) ...................................................7, 12, 13

*Razuki v. Caliber Home Loans, Inc.*,
  2018 U.S. Dist. LEXIS 196070 (S.D. Cal. 2018)..................................................4

*Reyes v. Educ. Credit Mgmt. Corp.*,
  773 F. App'x 989 (9th Cir. 2019)........................................................................12

*Ribas v. Clark*,
  38 Cal. 3d 355 (1985).......................................................................................6, 8

*Rogers v. Ulrich*,
  52 Cal. App. 3d 894 (1975)........................................................................6, 7, 13

*Rosenow v. Facebook, Inc.*,
  2020 U.S. Dist. LEXIS 73513 (S.D. Cal. 2020)................................................12

*Somers v. Apple, Inc.*,
  729 F.3d 953 (9th Cir. 2013) ...............................................................................4

*Tavernetti v. Super. Ct. of San Diego Cnty.*,
  22 Cal. 3d 187 (1978) ....................................................................................5, 14

*Thomas v. Papa John's Int'l, Inc.*,
  2023 U.S. Dist. LEXIS 179279 (S.D. Cal., Aug. 14, 2023).......................*passim*

*United States v. Staves*,
  383 F.3d 977 (9th Cir. 2004) .............................................................................12

*Valenzuela v. Keurig Green Mt., Inc.*,
  2023 U.S. Dist. LEXIS 95199 (N.D. Cal., May 24, 2023)................................11

*In re Vizio, Inc. Consumer Priv. Litig.*,
  238 F. Supp. 3d 1204 (C.D. Cal. 2017)..............................................................12

*Warden v. Kahn*,
  99 Cal. App. 805 (1979) ............................................................................6, 7, 13

*Williams v. What If Holdings, LLC*,
  2022 U.S. Dist. LEXIS 230732 (C.D. Cal. 2022) ...................................7, 18, 20

*Wright v. Ulta Salon,*
   2023 U.S. Dist. LEXIS 159774 (S.D. Cal., Sept. 8, 2023) .................................. 7

*Yale v. Clicktale,*
   2021 U.S. Dist. LEXIS 75024 (N.D. Cal. Apr. 15, 2021) ........................... 18, 20

*Yoon v. Lululemon USA, Inc.,*
   549 F. Supp. 3d 1073 (C.D. Cal. 2021) ................................................... 9

*In re Zynga Privacy Litig.,*
   750 F.3d 1098 (9th Cir. 2014) ............................................................... 9

**Statutes**

CIPA ......................................................................................... 1, 12, 13

CIPA section 631 ....................................................................... 5, 6, 10, 14

CIPA § 631(a) Clause ............................................................................ *passim*

CIPA § 631(a) clauses ..................................................................... 5

Privacy Act § 631(a) ............................................................................ *passim*

**Other Authorities**

Rule 8 ................................................................................................ 4

Rule 12(b)(6) ............................................................................. 1, 3, 21

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiff's First Amended Complaint ("FAC") alleges a putative class action under the California Invasion of Privacy Act ("CIPA") § 631(a). *See* FAC, Doc. No. 23, ¶¶ 110-25. Plaintiff is a frequent filer in the Southern District of California who apparently seeks out privacy violations for lawsuits. *See Augustine v. Capital One*, Case No.: 18-cv-00180 (S.D. Cal. 2018) (alleging CIPA claims for conversations recorded without consent); *Augustine v. Quest Diagnostics*, Case No.: 22-cv-01980 (S.D. Cal. 2022) (alleging CIPA claims for "session replay" software on website); *Augustine v. Lenovo*, Case No.: 22-cv-02027 (S.D. Cal. 2022) (alleging CIPA claims for "session replay" software on website).[1]

Essentially, plaintiff is "tester" and this is a copycat lawsuit with largely cut-and-paste FAC allegations. Like other lawsuits filed by plaintiff, she alleges that she visited defendant's website and that defendant used "session replay" software that allowed a third party to record what plaintiff did on the website. *See* FAC, Doc. No. 23, ¶¶ 2, 41, 46. Plaintiff claims this violated CIPA § 631(a). *Id.* at ¶¶ 110-23.

This case should be dismissed pursuant to Rule 12(b)(6) because plaintiff fails to allege <u>facts</u> that demonstrate defendant does anything more than use a third-party software service as a tool to record its own data. Instead, the bulk of the FAC relies entirely on speculative conclusions, buzz words and labels that have repeatedly been held to be insufficient for stating this type of claim.

In a series of cases, this Court recently held that similar complaint allegations fail to state a claim under CIPA § 631(a). *See Thomas v. Papa John's Int'l, Inc.*, 2023 U.S. Dist. LEXIS 179279 (S.D. Cal., Aug. 14, 2023); *Esparza v. Uag Escondido A1 Inc.*, 2023 U.S. Dist. LEXIS 130589 (S.D. Cal., July 27, 2023); and *Garcia v. Build.com*, 2023 U.S. Dist. LEXIS 121085 (S.D. Cal., July 13, 2023).

---

[1] *See also Augustine v. Credit One*, 18-cv-00184 (S.D. Cal. 2018); *Augustine v. Capital One Auto*, 18-cv-00511 (S.D. Cal. 2018); *Augustine v. TLC Resorts Vacation Club*, 18-cv-01120 (S.D. Cal. 2018); *Augustine v. Lien Enforcement*, 18-cv-02115 (S.D. Cal. 2018); *Augustine v. Experian*, 20-cv-00365 (S.D. Cal. 2020).

1   Plaintiff's claims in her FAC here largely overlap with the plaintiffs' pleadings in
2   these three cases and therefore defendant seeks dismissal of the case for largely the
3   same reasons.

4   **II.   FACTS**

5       Few actual <u>facts</u> are alleged in the FAC. The few facts that are alleged
6   establish that plaintiff visited defendant's website in 2022 "to look at hotel rooms
7   and vacation packages." *See* FAC, Doc. No. 23, ¶ 41.

8       Plaintiff alleges that "[a]s soon as Defendant's site loaded on Plaintiff's
9   computer, Plaintiff's computer began sending and receiving electronic
10  communications in the form of instructions to and from Defendant's computer
11  servers utilized to operate its website. The commands were sent as messages
12  indicating to Defendant what words and text were typed and what content was being
13  clicked, requested, and inputted, by Plaintiff." *Id.* at ¶ 43.

14      The FAC does not allege that plaintiff ever actually looked at any hotel rooms
15  or vacation packages. In fact, the FAC does not allege that plaintiff actually viewed
16  anything. The FAC does not allege what plaintiff looked at, if anything. The FAC
17  does not allege what plaintiff typed, if anything. The FAC does not allege what
18  plaintiff clicked, requested or inputted, if anything. Rather, the FAC is entirely silent
19  as to what, if any, "electronic communications" were sent and received pertaining to
20  plaintiff.

21      Plaintiff alleges that defendant and a third-party, Contentsquare, through use
22  of "session replay" software, "were able to learn more about Plaintiff and Class
23  Members, including the pages and content they viewed, their scroll movements,
24  words and text typed even if not fully entered, copy and paste actions, any search
25  terms (even if not fully entered), mouse clicks and movements, keystrokes, and all
26  other information related to the visit." *Id.* at ¶¶ 2, 5, 44.

27      Again, the FAC does not allege what "pages and content" were viewed by
28  plaintiff, what "scroll movements" were undertaken by plaintiff, what "words and

text" were typed by plaintiff, what "copy and paste actions" were performed by plaintiff, what "search terms" were entered by plaintiff, what "mouse clicks and movements" were made by plaintiff nor what "keystrokes" were entered by plaintiff, if any.

Plaintiff alleges that "[w]hile perusing Defendant's site, Plaintiff's web browser sent "GET requests" to Defendant's server. The server responded by sending HTML code to Plaintiff's mobile browser. The browser interpreted the code to allow the website to appear on Plaintiff's screen. Defendant's HTML code included JavaScript that told Plaintiff's browser to send another GET request to Contentsquare's server. That server responded by sending its own code to Plaintiff's browser. Once Plaintiff's browser loaded the code from Contentsquare, two things happened. First, the code placed cookies on Plaintiff's browser so that Plaintiff's activity on the webpage had an associated visitor ID. Second, the code told Plaintiff's browser to begin sending information to Contentsquare as Plaintiff navigated on Defendant's website, such as communicating that Plaintiff had searched for certain things. Contentsquare could later use this information to identify which of Defendant's customers may be receptive to certain promotions." *Id.* at ¶ 52.

The FAC does not allege that any information of plaintiff's was used to identify her. Furthermore, the FAC does not allege that plaintiff was ever later sent any "certain promotions." The FAC does not allege that Contentsquare actually used any information and/or what, where, when or how any information was ever used.

## III.    ARGUMENT

### A.    The FAC Fails Because it Alleges the Same Type of Threadbare Claim *Iqbal* and *Twombly* Warn Of.

Under Rule 12(b)(6), a complaint must allege "factual content that allows the court to draw the reasonable inference that the defendant is responsible for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Courts require "more than labels and conclusions, and a formulaic recitation of the elements of a

cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Courts should dismiss a complaint if it "either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013).

Plaintiff's claim here fails because it is precisely the type of "threadbare" claim *Iqbal* and *Twombly* warn of. *See Iqbal*, 556 U.S. at 678-79 ("Rule 8 … does not unlock the doors of discovery for a plaintiff armed with no more than conclusions.") The FAC alleges many conclusions but it does not support those conclusions with any facts. Instead, it recites "buzz words" which the Supreme Court instructs are not enough. *See Razuki v. Caliber Home Loans, Inc.*, 2018 U.S. Dist. LEXIS 196070, *5 (S.D. Cal. 2018) (rejecting conclusions and "buzz words" in a putative class action because, as noted in *Twombley*, 550 U.S. at 559, plausibility pleading standards are especially important in cases like this one, where the defendant faces the 'potentially enormous expense of discovery' if the Court denies the motion to dismiss).

The requirement that a plaintiff plausibly plead their claim prevents a would-be class plaintiff "with a largely groundless claim [from] be[ing] allowed to take up the time of a number of other people, with the right to do so representing an *in terrorem* increment of settlement value." *Id*. at 558 (quoting *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 347 (2005). These factors caution against subjecting defendant to the "potentially enormous expense of discovery" without a better showing from the plaintiff that he has a plausible case. *Id*.

B.   The FAC Fails to State a Claim Under CIPA § 631(a).

This Court stated in *Garcia* that CIPA § 631(a) "makes actionable 'three distinct and mutually independent patterns of conduct: intentional wiretapping, willfully attempting to learn the contents or meaning of a communication in transit over a wire, and attempting to use or communicate information obtained as a result of engaging in either of the previous two activities.'" 2023 U.S. Dist. LEXIS 121085,

\*11 (citing *Tavernetti v. Super. Ct. of San Diego Cnty.*, 22 Cal. 3d 187, 192 (1978)). "Section 631 also imposes liability upon 'anyone 'who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the' … three bases for liability.'" *Garcia*, 2023 U.S. Dist. LEXIS 121085 at \*11 (citing *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1134 (E.D. Cal. 2021) (quoting CIPA)). Specifically, CIPA § 631(a) makes liable:

> Any person
>
> [1] who, by means of any machine, instrument, or contrivance, or in any other manner, intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively, or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system, or
>
> [2] who willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state; or
>
> [3] who uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained, or
>
> [4] who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section

The FAC here fails to state a claim under any of the four CIPA § 631(a) clauses.

C.     The FAC Fails to State a Claim Under CIPA § 631(a) Clause One.

*1.     Parties To A Conversation Cannot Eavesdrop on Their Own Conversations.*

Defendant cannot be liable under CIPA § 631(a) Clause One because parties to a conversation cannot eavesdrop on their own conversations. *Garcia*, 2023 U.S.

Dist. LEXIS 121085 at *12-13 (citing *Warden v. Kahn*, 99 Cal. App. 805, 811 (1979) (distinguishing "eavesdropping by a third party" from "recording by a participant to a conversation") and *Rogers v. Ulrich*, 52 Cal. App. 3d 894, 899 (1975) ("It is never a secret to one party to a conversation that the other party is listening to the conversation …."))". Here, the FAC alleges that plaintiff intentionally "visited Defendant's website to look at hotel rooms and vacation packages" and that "Defendant's site loaded on plaintiff's computer." *See* FAC, Doc. No. 23, ¶¶ 41, 43. Therefore, the FAC identifies that plaintiff was a willing participant in communicating with defendant. These facts cannot plausibly allege a violation of Clause One because plaintiff alleges that defendant was the intended recipient of any potential communications. *See Garcia*, 2023 U.S. Dist. LEXIS 121085 at *13 (citing *Ribas v. Clark*, 38 Cal. 3d 355, 360 n.3 (1985) ("[S]ection 631 does not penalize the secret recording of a conversation by one of the participants.") and *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 607 (9th Cir. 2020) ("[Section 631] contain[s] an exception from liability for a person who is a 'party' to the communication …."))". This Court in *Garcia* held that a defendant "cannot be liable under the first three clauses" of CIPA § 631(a) in this situation. *Garcia,* 2023 U.S. Dist. LEXIS 121085 at *12-13. This Court repeated this holding in *Thomas*, 2023 U.S. Dist. LEXIS 179279 at *16-17 and *Esparza*, 2023 U.S. Dist. LEXIS 130589 at *4.

   2.   *No Communication Via "Telegraph or Telephone Wire, Line, Cable, or Instrument of Any Internal Telephonic Communication System" is Alleged.*

Clause One of Section 631(a) is also expressly limited to communications over a "telegraph or telephone wire, line, cable, or instrument of any internal telephonic system." Defendant cannot be liable under CIPA § 631(a) Clause One because the FAC does not allege that any telegraph or telephone communications took place. Again, here the FAC, as it relates to plaintiff, alleges that plaintiff "visited Defendant's website" … "on plaintiff's computer." *See* FAC, Doc. No. 23,

¶¶ 41, 43. There are no allegations in the FAC that plaintiff used a telegraph or telephone.

Courts routinely reject the argument that Clause One applies to internet connections. *See Wright v. Ulta Salon*, 2023 U.S. Dist. LEXIS 159774, *11 (S.D. Cal., Sept. 8, 2023) ("Based on the statutory language of Clause 1 … courts to address the issue have held that Clause applies *only* to 'telegraph and telephone' wires, lines, cables, or instruments,' and not to internet connections."); *Licea v. Am. Eagle Outfitters, Inc.*, 2023 U.S. Dist. LEXIS 42549, *11 (E.D. Cal., Mar. 7, 2023) ("Courts have consistently interpreted this clause as applying only to communications over telephones and not through the internet."); *Williams v. What If Holdings, LLC*, 2022 U.S. Dist. LEXIS 230732, *6 (C.D. Cal. 2022) (determining "the first clause of Section 631(a) concerns telephonic wiretapping specifically, which does not apply to the context of the internet"); *Mastel*, 549 F. Supp. 3d at 1135 ("The court will therefore follow the overwhelming weight of authority requiring a plaintiff to plausibly allege that a defendant intentionally tapped or made an unauthorized connection with a telegraph or telephone wire, line, cable, or instrument to state a claim under § 631(a)'s first clause.")

D.   The FAC Fails to State a Claim Under CIPA § 631(a) Clause Two.

1.   *Parties To A Conversation Cannot Eavesdrop on Their Own Conversations.*

For the same reason defendant cannot be liable under CIPA § 631(a) Clause One, defendant also cannot be liable under CIPA § 631(a) Clause Two – because parties to a conversation cannot eavesdrop on their own conversations. *Garcia*, 2023 U.S. Dist. LEXIS 121085 at *13 (citing *Warden*, 99 Cal. App. at 811, and *Rogers*, 52 Cal. App. 3d at 899). Here, the FAC identifies that plaintiff was a willing participant in communicating with defendant. *See* FAC, Doc. No. 23, ¶¶ 41, 43. Thus, these facts cannot plausibly allege a violation of Clause Two because plaintiff alleges that defendant was the intended recipient of any potential communications.

See *Garcia*, 2023 U.S. Dist. LEXIS 121085 at *13 (citing *Ribas*, 38 Cal. 3d at 360 n.3 and *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 607). Again, this Court in *Garcia*, *Thomas* and *Esparza* held that a defendant cannot be liable under the first three clauses of CIPA § 631(a) in this situation. *Garcia*, 2023 U.S. Dist. LEXIS 121085 at *12-13; *Thomas*, 2023 U.S. Dist. LEXIS 179279 at *16-17 and *Esparza*, 2023 U.S. Dist. LEXIS 130589 at *4.

> 2.    *The FAC Fails to Allege Anyone Read or Learned the "Contents or Meaning" of Any Communication.*

Clause Two of Section 631(a) is expressly limited to situations where someone "reads, or attempts to read, or to learn the contents or meaning of any message, report or communication…." Defendant cannot be liable under CIPA § 631(a) Clause Two because the FAC does not allege the existence of any message, report or communication in the first place.

The FAC does not allege that plaintiff actually viewed anything. The FAC does not allege what plaintiff looked at, if anything. The FAC does not allege what plaintiff typed, if anything. The FAC does not allege what plaintiff clicked, requested or inputted, if anything. Rather, the FAC is entirely silent as to what, if any, "electronic communications" were sent and received pertaining to plaintiff. The FAC does not allege what "pages and content" were viewed by plaintiff, what "scroll movements" were undertaken by plaintiff, what "words and text" were typed by plaintiff, what "copy and paste actions" were performed by plaintiff, what "search terms" were entered by plaintiff, what "mouse clicks and movements" were made by plaintiff nor what "keystrokes" were entered by plaintiff, if any. Therefore, based on the allegations in the FAC, plaintiff has failed to allege that anyone read or learned the "contents or meaning" of any communication.

Additionally, the term "contents" in Clause Two encompasses only "information concerning the substance, purport, or meaning of that communication." *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020). The Ninth Circuit

has held that "record information regarding the characteristics of the message that is generated in the course of the communication" does not qualify. *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014). Record information, the Ninth Circuit explained, "includes the name, address, and subscriber number or identity of a subscriber or customer." *Id*. Accordingly, text messages qualify as "contents" but user names, passwords, and geographic location information are not. *Brodsky*, 445 F. Supp. 3d at 127 citing *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1082-84 (N.D. Cal. 2015).

Again, here, because the FAC is completely silent about the substance of any communication and/or message that plaintiff sent to anyone, it necessarily fails to allege anyone read or learned the "contents" of any communication and/or message. Simply speculating that a generically described electronic communication *could have* been read without alleging that it *was* does not state a claim. Likewise, a conclusory label, such as "electronic communication" is just a "buzz word" without meaning when no detail at all concerning the actual substance of any communication or message is alleged.

Thus, while the FAC claims that defendant and Contentsquare "were able to learn more about Plaintiff and Class Members, including the pages and content they viewed, their scroll movements, words and text typed even if not fully entered, copy and paste actions, any search terms (even if not fully entered), mouse clicks and movements, keystrokes, and all other information related to the visit," these allegations represent just a threadbare conclusion as it relates to plaintiff because the FAC never alleges that plaintiff typed any words or text.  *See* FAC, Dkt. No., 23, at ¶¶ 2, 5, 44. Furthermore, even if plaintiff did allege *something* about how she interacted with defendant's website, if it fell within the above stated categories, it would still not plausibly allege "contents" of an electronic communication. *See, e.g.*, *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1082 (C.D. Cal. 2021) (concluding that "keystrokes, mouse clicks, pages viewed, and shipping and billing

information," among others, did not constitute "contents" under CIPA section 631); *Goldstein v. Costco Wholesale Corp.*, 559 F. Supp. 3d 1318, 1321 (S.D. Fla. 2021) (concluding that "mouse clicks and movements," "scroll movements," "pages and content viewed," "keystrokes," "copy and paste actions," "search terms," and "information inputted by Plaintiff" did not constitute "contents" under Florida wiretapping law).

>   3.   *The FAC Fails to Allege Anyone Read or Learned Anything "In Transit."*

Clause Two of Section 631(a) is also expressly limited to situations where someone "reads, or attempts to read, or to learn the contents or meaning of any message, report or communication *while the same is in transit*…." Defendant cannot be liable under CIPA § 631(a) Clause Two because, again, the FAC does not allege the existence of any message, report or communication in the first place. Thus, the FAC necessarily fails to allege that anyone read or learned anything "while the same is in transit."

Further, the very concept of "session replay" software is that whatever the content may be, it is certainly *not* viewed *while the same is in transit* but, rather, the session is stored so that if it is ever actually viewed, it is viewed as a "replay" … *i.e.* viewed later. The FAC acknowledges as much when it alleges that "Contentsquare could <u>later</u> use this information to identify which of Defendant's customers may be receptive to certain promotions." *See* FAC, Doc. No. 23, ¶ 52 [Emphasis added]. The FAC further alleges that the interactions with the website were "recorded" "for later playback." *Id*. at ¶ 66.

As a result, the FAC fails to allege anyone read or learned anything "*in transit*." The "in transit" language is not to be interpreted as while in "electronic storage." In other words, if the contents of a message, report or communication are viewed while in electronic storage, as opposed to in transit, it does not state a claim under Clause Two. *See Licea*, 2023 U.S. Dist. LEXIS 425549, *22 (citing *Konop v.*

*Hawaiian Airlines, Inc.*, 302 F.3d 868, 876 (9th Cir. 2002) (interpreting the in transit language as requiring interception during the communication's transmission and not during electronic storage.)). Rather, courts in the Ninth Circuit have interpreted the in transit requirement narrowly. *See Bunnell v. Motion Picture Ass'n of Am.*, 567 F. Supp. 2d 1148, 1152 (C.D. Cal. 2007) ("Even if the storage phase is transitory and lasts only a few seconds, it is still considered electronic storage….")

Here, at best, plaintiff alleges that her session was recorded and put into electronic storage. However, she fails to allege what, if anything, that session involved and further, she fails to allege when, if ever, anyone read or viewed it. Thus, the FAC allegations are entirely lacking of any substance that would state a plausible claim under Clause Two. The FAC fails to satisfy the "in transit" timing requirement.

Similar allegations were recently rejected in *Valenzuela v. Keurig Green Mt., Inc.*, 2023 U.S. Dist. LEXIS 95199, *11-12 (N.D. Cal., May 24, 2023). There the court held that "[t]o be liable, the eavesdropper must listen to a communication 'while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state.'" *Id.* citing Cal. Penal Code § 631(a). The court in *Valenzuela* explained that "while" is the "key word." *Id*. Similar to the FAC here, plaintiff in *Valenzuela* alleged that the software at issue in *Valenzuela* "allow[ed] the [third party] to secretly intercept in real time, eavesdrop upon and store transcripts of Defendant's chat communications[.]" The court in *Valenzuela* questioned: "But how?" and held: "[t]hat statement does little more than restate the pleading requirement of real time interception…" *Id*. The court in *Valenzuela* held that the "complaint is entirely speculative" and continued to question "[h]ow do these third parties interface with Defendant's chat platform other than via 'code'?" *Id*. The court in *Valenzuela* concluded that "[i]t is impossible to infer from the complaint … [t]hus, Plaintiff's simultaneity claims are just too conclusory to survive [*Iqbal* and *Twombly*]." *Id*. Plaintiff's FAC claims here are no different.

Faced with similarly deficient allegations, courts have repeatedly dismissed claims under Clause Two. *See, e.g.*, *Mastel*, 549 F. Supp. 3d at 1136-37 (dismissing CIPA claim where plaintiff did not "plausibly allege[] that [defendant] read one of his communications while it was still in transit"); *Adler v. Cmty.*, 2021 U.S. Dist. LEXIS 201644, *12 (C.D. Cal. 2021) (dismissing CIPA claim where "there [was] no plausible allegation that Defendant acted to learn the contents of the messages while they were, in a technical sense, in transit or in the process of being received"); *Rosenow v. Facebook, Inc.*, 2020 U.S. Dist. LEXIS 73513, *22 (S.D. Cal. 2020) (dismissing Clause Two claim that relied upon allegations that "Yahoo knowingly used an algorithm to intercept and scan Plaintiff's incoming chat messages for content during transit and before placing them in electronic storage" as "conclusory"); *In re Vizio, Inc. Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1228 (C.D. Cal. 2017) (dismissing plaintiff's Clause Two claim that relied upon a "conclusory allegation that Vizio intercepted [plaintiffs'] electronic communications 'during transmission'" and "vague allegations about how Vizio's data collection occurs in 'real time'").

### 4. The FAC Fails to Allege Facts Supporting Lack of Consent.

Plaintiff also must plausibly allege lack of consent in order to state a claim under Clause Two of CIPA § 631(a). *See Reyes v. Educ. Credit Mgmt. Corp.*, 773 F. App'x 989, 990 n.1 (9th Cir. 2019) ("[T]he plaintiff bringing a CIPA claim has the burden to prove that the defendant lacked consent to record.")

"[C]onsent may be implied where there are surrounding circumstances indicating that the [plaintiff] knowingly agreed to the surveillance." *United States v. Staves*, 383 F.3d 977, 981 (9th Cir. 2004) (citation & internal quotation marks omitted).

Here, plaintiff is a frequent filer or "tester" in the Southern District of California who apparently seeks out privacy violations for lawsuits. *See Augustine v. Capital One*, Case No.: 18-cv-00180 (S.D. Cal. 2018) (alleging CIPA claims for

conversations recorded without consent); *Augustine v. Quest Diagnostics*, Case No.: 22-cv-01980 (S.D. Cal. 2022) (alleging CIPA claims for "session replay" software on website); *Augustine v. Lenovo*, Case No.: 22-cv-02027 (S.D. Cal. 2022) (alleging CIPA claims for "session replay" software on website). Based on this history, it is far more plausible here that plaintiff intended for a third-party "to read, or attempt to read, or to learn the contents or meaning of any message, report, or communication" (had the FAC identified any) than not.

E.   The FAC Fails to State a Claim Under CIPA § 631(a) Clause Three.

1.   *Parties To A Conversation Cannot Eavesdrop on Their Own Conversations.*

For the same reason defendant cannot be liable under Clause One or Clause Two, defendant also cannot be liable under CIPA § 631(a) Clause Three – because parties to a conversation cannot eavesdrop on their own conversations. *Garcia*, 2023 U.S. Dist. LEXIS 121085 at *13 (citing *Warden*, 99 Cal. App. at 811, and *Rogers*, 52 Cal. App. 3d at 899). Again, this Court in *Garcia*, *Thomas* and *Esparza* held that a defendant cannot be liable under the first three clauses of CIPA § 631(a) in this situation. *Garcia,* 2023 U.S. Dist. LEXIS 121085 at *12-13; *Thomas*, 2023 U.S. Dist. LEXIS 179279 at *16-17 and *Esparza*, 2023 U.S. Dist. LEXIS 130589 at *4.

2.   *A Violation of Clause Three Cannot Exist Without a Violation of Either Clause One or Clause Two.*

Clause Three of Section 631(a) is expressly limited to use of "any information so obtained," with the "so obtained" text referring to a violation of either Clause One of Clause Two. In other words, liability under Clause Three is derivative of liability under either Clause One or Clause Two. *See Mastel*, 549 F. Supp. 3d at 1137 ("Because the court concludes that [the plaintiff] has failed to state a claim under either clause 1 or 2, his claim that [the defendant] violated § 631(a)'s third clause fails as a matter of law."); *In re Google Assistant Privacy Litig.*, 457 F. Supp. 3d 797, 827 (N.D. Cal. 2020) ("Plaintiffs must establish that the information at issue …

was obtained through a violation of the first or second clauses. Because plaintiffs have not done so, they also have failed to plead a violation of the third clause."); *In re Google Inc. Gmail Litig.*, 2013 U.S. Dist. LEXIS 172784, *59 (N.D. Cal. 2013) citing *Tavernetti*, 583 P.2d at 741 (Clause Three prohibits anyone from "attempting to use or communicate information obtained as a result of engaging in either of the two previous activities.");

As a result, defendant cannot be liable here under CIPA § 631(a) Clause Three because the FAC does not allege a violation of either Clause One or Clause Two, as further discussed *supra* in Sections III.C and III.D.

F.   The FAC Fails to State a Claim Under CIPA § 631(a) Clause Four.

As indicated above, this Court in *Garcia* held that "Section 631 also imposes liability upon 'anyone 'who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the' … three bases for liability.'" *Garcia*, 2023 U.S. Dist. LEXIS 121085 at *11 (citing *Mastel*, 549 F. Supp. 3d at 1134). In other words, this Court acknowledged that a violation of Clause Four is derivative of a violation by a third-party of Clause One, Clause Two or Clause Three. As explained above, the FAC fails to plausibly allege a violation of Clause One, Clause Two or Clause Three by anybody. Therefore, the FAC fails to allege a derivative violation of Clause Four by defendant.

1.   *No Derivative Claim for Aiding Contentsquare in Violating Clause One Exists Because No Communication Via "Telegraph or Telephone Wire, Line, Cable, or Instrument of Any Internal Telephonic Communication System" is Alleged.*

As argued *supra* in Section III.C.2, Clause One of Section 631(a) is expressly limited to communications over a "telegraph or telephone wire, line, cable, or instrument of any internal telephonic system." Defendant cannot be liable under CIPA § 631(a) Clause Four for "aiding" Contentsquare in violating Clause One because the FAC does not allege that any telegraph or telephone communications

took place. Therefore, plaintiff has failed to allege that Contentsquare violated Clause One and that defendant violated Clause Four.

> 2.   *No Derivative Claim for Aiding Contentsquare in Violating Clause Two Exists Because The FAC Fails to Allege Anyone Read or Learned the "Contents or Meaning" of Any Communication.*

As argued *supra* in Section III.D.2, Clause Two of Section 631(a) is expressly limited to situations where someone "reads, or attempts to read, or to learn the contents or meaning of any message, report or communication…." Defendant cannot be liable under CIPA § 631(a) Clause Four for "aiding" Contentsquare in violating Clause Two because the FAC does not allege the existence of any message, report or communication in the first place. The FAC identifies no communication by plaintiff at all. The FAC only states that plaintiff "visited" defendant's website without any further facts. *See* FAC, Doc. No. 23, ¶ 41. Therefore, based on the allegations in the FAC, plaintiff has failed to allege that anyone read or learned the "contents or meaning" of any communication. The FAC is completely silent about the substance of any communication and/or message that plaintiff sent to anyone, thus it necessarily fails to allege anyone read or learned the "contents" of any communication and/or message.

Therefore, plaintiff has failed to allege that Contentsquare violated Clause Two and that defendant violated Clause Four.

> 3.   *No Derivative Claim for Aiding Contentsquare in Violating Clause Two Exists Because The FAC Fails to Allege Anyone Read or Learned Anything "In Transit."*

As argued *supra* in Section III.D.3, Clause Two of Section 631(a) is also expressly limited to situations where someone "reads, or attempts to read, or to learn the contents or meaning of any message, report or communication *while the same is in transit*…." Defendant cannot be liable under CIPA § 631(a) Clause Four for "aiding" Contentsquare in violating Clause Two because, again, the FAC does not

allege the existence of any message, report or communication in the first place. Thus, the FAC necessarily fails to allege that anyone read or learned anything "while the same is in transit."

At best, plaintiff alleges that the session from her visit was recorded and put into electronic storage, which is not sufficient to satisfy the "in transit" timing requirement. *See* Section D.3 *supra*.

Therefore, plaintiff has failed to allege that Contentsquare violated Clause Two and that defendant violated Clause Four.

> 4.   *No Derivative Claim for Aiding Contentsquare in Violating Clause Two Exists Because the FAC Fails to Allege Facts Supporting Lack of Consent.*

As argued *supra* in Section III.D.4, it is plaintiff's burden under Clause Two of CIPA § 631(a) to plausibly establish lack of consent. Defendant cannot be liable under CIPA § 631(a) Clause Four for "aiding" Contentsquare in violating Clause Two because the FAC fails to sufficiently allege lack of consent.

As explained above, plaintiff is a frequent filer or "tester" in the Southern District of California who apparently seeks out privacy violations for lawsuits. Based on this history, it is far more plausible that plaintiff intended for a third-party "to read, or attempt to read, or to learn the contents or meaning of any message, report, or communication" (had the FAC identified any) than not. Therefore, plaintiff has failed to allege that Contentsquare violated Clause Two and that defendant violated Clause Four.

> 5.   *No Derivative Claim for Aiding Contentsquare in Violating Clause Three Exists Because A Violation of Clause Three Cannot Exist Without a Violation of Either Clause One or Clause Two.*

As argued *supra* in Section III.E.2, Clause Three of Section 631(a) is expressly limited to use of "any information so obtained," with the "so obtained" text referring to a violation of either Clause One of Clause Two. In other words, liability under Clause Three is derivative of liability under either Clause One or

Clause Two. Defendant cannot be liable under CIPA § 631(a) Clause Four for "aiding" Contentsquare in violating Clause Three because the FAC does not allege a violation of Clause One or Clause Two. Therefore, plaintiff has failed to allege that Contentsquare violated Clause Three and that defendant violated Clause Four.

6.   *The FAC Fails to Plausibly Allege the Existence of a Third-Party Eavesdropper.*

If this Court finds that the FAC fails to plausibly allege a violation of Clause One, Clause Two or Clause Three by Contentsquare (as argued *supra* in sections III.C.2, III.D.2, III.D.3, III.D.4, III.E.2, III.F.1, III.F.2, III.F.3, III.F.4 and III.F.5), it need not determine whether the FAC also plausibly alleges the existence of a third-party eavesdropper. Simply put, if the FAC fails to allege that Contentsquare violated Clause One, Clause Two or Clause Three, the FAC should be dismissed because defendant cannot violate Clause Four without a predicate violation by Contentsquare being established in the first place.

Only if the Court rules that the FAC has alleged that Contentsquare violated Clause One, Clause Two or Clause Three should it determine whether the FAC plausibly alleges the existence of a third-party eavesdropper.

If that determination is made, the FAC should be dismissed because plaintiff fails to allege <u>facts</u> that demonstrate that defendant does anything more than use a third-party software service as a tool to record its own data. Therefore, the FAC does not plausibly allege the existence of a third-party eavesdropper. *See Garcia*, 2023 U.S. Dist. LEXIS 121085 at *12-14; *Thomas*, 2023 U.S. Dist. LEXIS 179279 at *16-17 and *Esparza*, 2023 U.S. Dist. LEXIS 130589 at *4.

As explained in *Garcia*, the allegations here "cannot be a basis for liability because a participant to a conversation cannot eavesdrop on their own conversation." *Garcia* at *14. "In cases where courts have found software companies to be third-party eavesdroppers, those third parties had mined information from other websites and used that information for their own purposes." *Id.* at 15.

17

In other words, where, like here, the alleged third-party software service was an "extension of" defendant, not a third-party eavesdropper, there is no violation of CIPA § 631(a). *Id.* (quoting *Graham v. Noom*, 533 F. Supp. 3d 823, 832 (N.D. Cal. 2021)). Other than a threadbare conclusion that Contentsquare "used and disclosed the data it gained for its own business purposes," the FAC contains no further allegations or explanation as to why plaintiff is claiming that Contentsquare is a third-party eavesdropper.  *See* FAC, Doc. No. 23, ¶ 11

Notably, the FAC does not allege that any information of plaintiff's was used. Furthermore, while the FAC alleges that Contentsquare could "later use" "information to identify which of Defendant's customers may be receptive to certain promotions," the FAC does not allege that plaintiff was ever later sent any "certain promotions." *See* FAC, Doc. No. 23, ¶ 52.  Therefore, the FAC does not allege that Contentsquare actually used any information and/or what, where, when or how any information was ever used.

Numerous courts have concluded that a company's use of a vendor as a service provider is akin to the use of a tool or agent, and is merely an extension of the company itself and, therefore, the use of such a tool or software does not establish the existence of a third-party to the communication that would be capable of eavesdropping. *Graham*, 533 F. Supp. 3d at 832; *Williams*, 2022 U.S. Dist. LEXIS 230732 at *7 ("the question boils down to whether [the vendor] was an independent third party hired to eavesdrop on [defendant's website], or whether [the vendor] software was merely a tool that [defendant] used to record its own communications with plaintiff."); *Yale v. Clicktale*, 2021 U.S. Dist. LEXIS 75024, *6-7 (N.D. Cal. Apr. 15, 2021) (finding that Clicktale, Inc. was "not a third-party eavesdropper. It is a vendor that provides a software service that allows its clients to monitor their website traffic.").

In *Graham*, plaintiffs alleged that defendant used third-party "session replay" software to record what visitors were doing on its website, such as their keystrokes,

mouse clicks, and page scrolling, thereby allowing a full picture of the user's website interactions. *Graham*, 533 F. Supp. 3d at 827. The court held that the plaintiffs "do not plausibly plead that [the third-party] eavesdropped on their communications with defendant and instead plead only that [the third-party] is defendant's vendor for software services. *Id.* at 828. The court explained that, in other cases in which the software companies were found to be third-party eavesdroppers, those parties were in fact "independent parties who mined information from other websites and sold it …" *Id.* at 832.

The FAC here contains no allegations whatsoever that Contentsquare was mining information from defendant's website and selling it.

In *Licea v. Vitacost.com, Inc.*, 2023 U.S. Dist. LEXIS 142055, *8 (S.D. Cal., July 24, 2023), the plaintiff alleged that defendant "allow[ed] at least one independent third-party vendor … to use a software device or contrivance to secretly intercept (during transmission and in real time), eavesdrop upon, and store transcripts of Defendant's chat communications with unsuspecting website visitors." Plaintiff alleged that defendant "aided" the third-party vendor to eavesdrop upon such conversations in real time. *Id.* However, the court in *Licea* ruled that plaintiff's allegations only established that defendant was paying the third-party vendor for the service of obtaining and storing communications, rather than in furtherance of the vendor's own independent use of the communications. *Id.* at *9.

The court in *Licea* held that it agreed "with those decisions holding that a website owner that engages a vendor to record website-based communications for the website owner's own purposes is not thereby aiding … eavesdropping by a third party in violation of Section 631(a)." *Id.* at *9-11 (citing *Graham*, 533 F. Supp. 3d at 822-33 ("[A]s a service provider, [third-party vendor] is an extension of [Defendant]. It provides a tool - like a tape recorder ... that allows [Defendant] to record and analyze its own data in aid of [Defendant's] business. It is not a third-party eavesdropper. As a result, [Defendant is not liable for aiding and abetting

[vendor's] wrongdoing because there is no wrongdoing."); *Martin v. Sephora USA, Inc.*, 2023 U.S. Dist. LEXIS 55930, *32 (E.D. Cal. Apr. 24, 2023) ("[C]aselaw supports the contention that a third-party vendor that is deemed to merely facilitate customer chats as an extension of the company does not trigger derivative liability under § 631(a)."); *Johnson v. Blue Nile, Inc.*, 2021 U.S. Dist. LEXIS 68711, *3-5 (determining that third-party vendor that used "session replay" software to record website activities of defendant's visitors was an extension of defendant); *Yale*, 2021 U.S. Dist. LEXIS 75024 at *1, 7 (holding plaintiff did not plausibly plead Section 631(a) violation against vendor that provided "Event-Triggered Recorder" software that logs visitor activity for web sites); *Cody v. Boscov's, Inc.*, 2023 U.S. Dist. LEXIS 37331, *5 (C.D. Cal., Mar. 3, 2023) ("Plaintiff must provide facts suggesting that [the vendors] are recording Defendant's customers' information for some use or potential future use beyond simply supplying this information back to Defendant."); *Williams*, 2022 U.S. Dist. LEXIS 230732 at *10 ("In sum, the facts as pled show that [vendor's software] functioned as a recorder, and not as an eavesdropper. [Third-party vendor] is not liable for wiretapping under Section 631(a) for providing a software tool, and the fact that [website owner] used software rather than a physical recording device for the same function does not mean that it aided and abetted wiretapping."); *Licea v. Cinmar*, 2023 U.S. Dist. LEXIS 38233, *20-21 (C.D. Cal., Mar. 7, 2023) ("Courts have determined that software like the alleged code employed by Defendant which intercepts in real time and stores transcripts is more akin to a tape recorder . . . than a friend against the door," not violative of Section 631(a)); *Licea v. American Eagle Outfitters, Inc.*, 2023 U.S. Dist. LEXIS 42549, *22 (C.D. Cal. Mar. 7, 2023) ("Accordingly, Defendant is entitled to the party exemption applied to the second clause of [S]ection 631(a), as Plaintiff fails to plead that the alleged third-party acted independently from Defendant as to constitute an unannounced auditor under California law.")).

Here, as in the above cited cases, the FAC fails to allege <u>facts</u> that demonstrate that defendant does anything more than use a third-party software service as a tool to record its own data. This Court should follow its decisions in *Garcia*, *Thomas*, and *Esparza* and the FAC should be dismissed.

## IV.   CONCLUSION

For the foregoing reasons, Defendant Great Wolf Resorts, Inc. respectfully requests that this Honorable Court grant its Rule 12(b)(6) motion and enter an Order dismissing this case in its entirety with prejudice.

DATED:  November 13, 2023              HINSHAW & CULBERTSON LLP


                                       */s/Todd P. Stelter*
                                       TODD P. STELTER
                                       VINCENT M. RIZZO
                                       Attorneys for Defendant
                                       GREAT WOLF RESORTS, INC.

21

1

## **CERTIFICATE OF SERVICE**

2          I hereby certify that on November 13, 2023, a copy of the foregoing was

3    served by ECF to counsel of record.

4

5                                                                    */s/ Todd P. Stelter*

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28